**Humberto SUAREZ, Plaintiff–Appellant,**

v.

**SUPERIOR COURT OF CALIFORNIA, County of Los Angeles Metropolitan Courthouse, a separate branch of government, Defendant–Appellee.**

No. 07–55234.

United States Court of Appeals, Ninth Circuit.

Submitted June 9, 2008.*

Filed June 19, 2008.

Kent F. Lowry, Esq., Caskey & Holzman, Los Angeles, CA, for Plaintiff–Appellant.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Leonora M. Schloss, Esq., Sedgwick, Detert, Moran & Arnold, LLP, Los Angeles, CA, Denise Trani-Morris, Sedgwick, Detert, Moran & Arnold, LLP, San Francisco, CA, for Defendant–Appellee.

Before: TROTT, THOMAS, and FISHER, Circuit Judges.

MEMORANDUM **

Humberto Suarez, a deaf man, appeals the district court's grant of summary judgment to Defendant Superior Court of California on Suarez's claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, *et seq.* and the Rehabilitation Act, 29 U.S.C. § 794. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

We review de novo a district court's grant of summary judgment. *Ferguson v. City of Phoenix,* 157 F.3d 668, 673 (9th Cir.1998). "To recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant." *Duvall v. County of Kitsap,* 260 F.3d 1124, 1138 (9th Cir.2001). In order to show intentional discrimination in the Ninth Circuit, the plaintiff must show that the defendant acted with "deliberate indifference." *Id.* at 1138–39. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that ... likelihood." *Id.* at 1139.

In the case at bar, Plaintiff appeared in court in the late afternoon of August 9,

2005, and his attorney requested an American Sign Language interpreter. Defendant continued the case to the next morning and ordered an interpreter to appear. Ordering an interpreter to appear the next morning does not amount to deliberate indifference. *See id.* ("[I]n order to meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness."). Furthermore, as ordered by Defendant, the interpreter appeared the next two mornings, but Plaintiff was unable to attend.

On August 15, Plaintiff appeared in court, but there was no interpreter present. There is no evidence that Defendant deliberately failed to order an interpreter to appear on August 15. *See id.* (explaining that "bureaucratic slippage" or negligence does not amount to deliberate indifference). Furthermore, the hearing on August 15 was continued to August 16 after Plaintiff's attorney informed the court that an interpreter was needed and none were available until August 16.

**AFFIRMED.**

FISHER, Circuit Judge, concurring, joined by Judges TROTT and THOMAS:

I agree that Suarez has not shown the Superior Court was deliberately indifferent in failing to inquire about the same-day availability of an American Sign Language ("ASL") translator. I am, however, unsettled by the absence of effective communication and coordination between the Superior Court and the Los Angeles County Sheriff's Department regarding Suarez's disability and his obvious need for a translator at his arraignment. Had Suarez

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

been able to communicate through a translator the first time he appeared before the Superior Court, this *innocent* man would not have had to spend the following *seven nights in jail.*

Suarez was mistakenly arrested on August 8, 2005, on a warrant that had been issued for another person. The Sheriff's Department first brought him from the Twin Towers Correctional Facility to the Metropolitan Courthouse a little before noon on Tuesday, August 9, and placed him in a holding cell in the basement. After about an hour and a half, a police officer who works for the Sheriff's Department apparently realized that Suarez was deaf and taped a sign reading "DEAF" to the front of his shirt. No other action was taken to alert the court to Suarez's disability. The taped sign proved to be wholly ineffective in alerting the Superior Court staff that Suarez would need accommodation at his arraignment. The court clerk testified that when Suarez was brought from the basement cell to the holding area of the courtroom, she did not see the sign on his shirt because she does not turn to look at the criminal defendants behind her. Thus no one on the court staff realized that Suarez was in need of accommodation until it was too late in the afternoon to obtain a translator for him before it ceased business for the day. Instead, a translator was ordered for 8:30 a.m. the following day. The predictable result was that Suarez was returned to spend another night at Twin Towers.

For the remainder of the week, Suarez was for some reason put on medical holds at Twin Towers, thus negating the court's scheduled arrangements for a translator. He was then held through the weekend while he waited for the court to reopen on Monday, August 15. Late on Monday morning, Suarez was finally brought to the Superior Court, but the Sheriff's Department did not inform the court in advance so that it could make the necessary arrangements for a translator. Instead, he simply arrived with the "DEAF" sign taped to his shirt. Once again, the court staff did not become aware of his presence in the holding tank until it was too late in the afternoon for the clerk feasibly to procure a same-day ASL translator. (Notably, the court clerk present that day testified that she *also* does not turn to look at the defendants in the holding tank—evidencing a common practice.) A translator was scheduled for the next day, relegating Suarez to spending yet another night in Twin Towers—his eighth since his arrest.

Suarez's week-long saga came to an end when he was finally arraigned with an ASL translator present on Tuesday, August 16, at which point the court discovered that the police had arrested the wrong man and ordered Suarez released forthwith.

At the time of Suarez's arrest and arraignment, the Superior Court had 19 prebooked and unbooked ASL translators who could be summoned to court without advance notice. I appreciate the difficulties of coordinating more than 400 translators for the court's 52 locations around the County, but I encourage the Superior Court and the Sheriff's Department to review their channels of communication and devise more effective ways of timely alerting the Court to a defendant's obvious need for accommodation. Throughout this litigation, the Superior Court has insisted that it could not have obtained a translator for Suarez because it did not know he was coming to court and did not know that he was deaf. Although "bureaucratic slippage that constitutes negligence rather than deliberate action" is not actionable under the Americans with Disability Act or the Rehabilitation Act, *see Duvall v. County of Kitsap,* 260 F.3d 1124, 1139 (9th

Cir.2001), this does not mean that a systemic problem of the kind this record reflects can be ignored. Given the interest of the Superior Court and the Sheriff's Department in the fair administration of justice, I hope they will take the opportunity to review their procedures and take appropriate corrective action.